United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>$43,029 U.S. CURRENCY and $9,641 U.S. CURRENCY<br><br>　　　　　Defendant.　　　　　　／ | No. 06-07421(EDL)<br><br>Related Case Nos. 07-2185 (EDL) & 07-1880 (EDL)<br><br>ORDER GRANTING UNITED STATES' MOTION TO STRIKE |

　　　On December 4, 2006, the United States government filed a single forfeiture action against defendants $42,019 in U.S. Currency and $9,641 in U.S. Currency, which were seized from Mr. Hector Vasquez during a drug arrest on May 5, 2006. The government initiated this forfeiture action on December 4, 2006. On March 18, 2008, the United States filed this motion to dismiss on the grounds that Mr. Vasquez lacks standing due to filing a late claim and answer. Mr. Vasquez opposed the motion and the United States filed a reply. Having read all the papers submitted and carefully considered the relevant authority, the Court hereby GRANTS the motion for the following reasons.

**I.  FACTS**

　　　The Court described the procedural background to this case fully in its January 11, 2008, Order. Briefly, Mr. Vasquez, a pro se claimant, seeks to assert his interest in property seized from

him during his arrest on May 5, 2006.  According to the government, while being detained on May 5, Mr. Vasquez gave the police permission to search his truck, and the police also conducted a search of 1999 Panama Avenue pursuant to a probation search condition.  The officers seized currency in the amount of $9,641 in U.S. dollars from his person, $43,029 from his truck, and methamphetamine from the house.  On May 18, 2006, Mr. Vasquez pleaded guilty to possession for sales of methamphetamine in violation of California Health and Safety Code §11378.  See January 11, 2008 Order at 2.

On June 20, 2006, and subsequently on August 24, 2006, the DEA sent written notice of the seizures of U.S. currency by certified mail to Mr. Vasquez at 1999 Panama Avenue and to Chuckawalla State Prison, respectively.  The notices explained the option of filing a claim with the DEA Forfeiture Counsel to contest the forfeiture action.  In response, Mr. Vasquez submitted two claims for seized property to the DEA.  The DEA then referred Mr. Vasquez's claim to the United States Attorney for initiation of judicial forfeiture proceedings.  Id.  On October 25, 2006, Mr. Vasquez filed actions in state court protesting the seizure, but did not serve the government.  Id.

On December 4, 2006, unaware of the claim forms that Mr. Vasquez filed in state court, the government filed this case, a single forfeiture action under 21 U.S.C. § 881(6) against defendants $42,029 in U.S. currency and $9,641 in U.S. currency.  See Docket No. 1 (Complaint for Forfeiture).  The government gave notice to interested parties, including Mr. Vasquez, that any claim against the seized items must be filed within thirty days of receiving notice, and an answer must be filed thereafter within twenty days pursuant to Rule G(5)(a).  See Docket Nos. 3 (Notice of Forfeiture Action) and 4 (Certificate of Service).  The government inadvertently quoted the outdated rule.  Under the new Rule of Civil Procedure G, effective December 1, 2006, a potential claimant of items seized in an in rem action is supposed to be advised that he or she has at least thirty-five days after the notice is sent to file a claim under Rule G(4)(b)(ii)(B), rather than thirty days under the former rule.  See Docket No. 25 (Supp. Case Management Statement).  Mr. Vasquez did not file a claim within either time period.  Under the revised rule, a claim was due by January 11, 2007.

Mr. Vasquez did not file any documents entitled a "claim" against the seized property within the required time period.  On February 2, 2007, Mr. Vasquez filed a "Motion to Strongly 'Object' to the Forfeiture Action," with copies of the claims in the two state court actions attached.  See Docket

No. 7. These exhibits provided notice to the government of the state actions, and the United States removed them to federal district court. While Mr. Vasquez signed the proof of service attached to the pleading, he left a blank signature line on the pleading itself.

On March 20, 2007, the government filed an opposition to Mr. Vasquez's motion to strongly object. The United States reminded Mr. Vasquez that he had failed to follow the procedural rule requiring the timely filing of a claim and answer, and argued that he therefore lacked standing. The United States provided Mr. Vasquez with a copy of Rule G. See Docket No. 10 at 6.

On April 16, 2007, ninety-five days after his claim was due, Mr. Vasquez filed a document opposing the federal forfeiture action (entitled Hector Mr. Vasquez accepts court order granting telephonic appearance; motion to present factual and procedural background; supporting facts, verified statement; points and authorities; claimants declaration; objection to forfeiture action and opposition to complaint, hereinafter "Docket No. 16"). The government regarded neither Mr. Vasquez's motion to strongly object or his objection to the forfeiture action as a claim under Rule G and continued to notify Mr. Vasquez of the requirements of a claim and answer multiple times over the course of the next eight months. See Docket No. 18 at 1, 4 (April 18, 2007 Case Management Statement) ("Although Hector Mr. Vasquez filed a motion objecting to this forfeiture action from prison, he has not filed a claim or an answer which entitles him to appear in this case and defend defendants, nor has he provided under oath good cause for the Court to extend the claim/answer filing deadlines"); Docket No. 25 at 3 (May 17, 2007 Case Management Statement) ("Neither Mr. Vasquez nor his father ever filed a claim or answer"); Docket No. 36 at 3 (August 26, 2007 Motion for Entry of Default) ("On December 4, 2006, the United States . . . gave notice to interested parties . . . to file a claim within thirty days of receiving notice"); Docket No. 41 at 1, 2, 3 (November 18, 2007 Opposition to Discovery) ("Mr. Vasquez has still not filed a claim and answer or made a good cause showing for extending the time to file a claim and answer . . . ").

The government now moves to strike Mr. Vasquez's claim and answer on the basis that Mr. Vasquez has not shown good cause to file a late claim and answer.[1] On May 13, 2008, Mr. Vasquez

---

[1] While the government's motion is entitled a "motion to dismiss," as the government notes on page one, its motion is one to strike under Federal Rule of Civil Procedure G(8)(c)(i)(A). See Docket No. 61 at 1 (March 18, 2008 Motion to Dismiss); United States v. $11,918.00, No. 1:03-cv-05679-AWI-SMS, 2007 WL 3037307, at *4, 7 (E.D. Cal. Oct. 17, 2007).

3

filed a document entitled "Claimant's Answer to Plaintiff's 'Complaint for Forfeiture'" in conjunction with his opposition to the government's motion to dismiss. See Docket Nos. 62 and 63. In his opposition, Mr. Vasquez contends that he deserves an extension of time to file his claim and answer because his low English skills led to his misunderstanding the law and because his work hours prohibited him from accessing the prison library where he could obtain assistance with his claim. The government maintains that Mr. Vasquez's record gives no indication that he did not fully comprehend the proceedings and that his numerous and sometimes sophisticated filings belie his claim that he misunderstood the law or could not receive assistance.

**II. DISCUSSION**

    **A. Legal Standard**

Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions requires that a person who asserts an interest in the defendant property may contest the forfeiture by filing a claim that: (1) identifies the specific property claimed; (2) identifies the claimant and states the claimant's interest in the property; (3) is signed by the claimant under penalty of perjury; and (4) is served on the government attorney. Fed. R. Civ. P. Supp. G(5)(a)(i). Unless the Court for good cause sets a different time, the claim must be filed by the time stated in the direct notice sent under Rule G(4)(b). Fed. R. Civ. P. Supp. G(5)(a)(ii). While the Court has discretion to enlarge the time to file a claim, "the court's discretion is not unbounded. It should only exercise its discretion to grant additional time where the goals underlying the time restriction and the verification requirement are not thwarted." United States v. $100,348.00 in U.S. Currency, 354 F.3d 1110, 1117 (9th Cir. 2004) (citing United States v. 1982 Yukon Delta Houseboat, 774 F.2d 1432, 1435-36 (9th Cir. 1985)). Rule G(8) provides that where a claimant fails to properly comply with Rule G(5) in filing a claim or motion, the government may move to strike a claim or answer.

    In United States v. $100,348 in U.S. Currency, the Ninth Circuit reiterated certain factors that lower courts should consider in ruling on an untimely claim: (1) when claimant became aware of the currency's seizure; (2) whether the United States Attorney may have encouraged the delay; and (3) the claimant's health. See 354 F.3d at 1117. The Court also noted that this list was not exhaustive and that additional factors were also pertinent, including those considered by the Fourth Circuit, such as whether the claimant was properly served, whether the government would be

4

1 prejudiced, whether the government encouraged the delay or misguided the claimant, whether the
2 claimant informed the government and the court of his interest before the deadline, whether the
3 claimant had expended resources preparing for trial, the claimant's good faith, the claimant's health
4 problems, whether the government has complied with procedural rules, and whether the claimant
5 was acting pro se. Id. at 1118-19.  The Court also noted the Seventh Circuit factors, which include:
6 "the time at which the claimant became aware of the seizure, whether the government encouraged
7 the delay, the reasons proffered for the delay, whether the claimant has advised the court and the
8 government of its interest in [the] defendant [property] before the claim deadline, whether the
9 government would be prejudiced by allowing the late filing, the sufficiency of the [pleadings] in
10 meeting the basic requirements of the verified claim, and whether the claimant timely petitioned for
11 an enlargement of time."  Id. at 1118.

### B. Government's Motion

#### 1. Whether Claimant's Pro Se Filings Constitute a Claim or Answer

Although Mr. Vasquez does not allege that he thought he had filed a claim or answer prior to May 13, 2008, in light of his pro se status, the Court has analyzed whether any of his filings in this case constitute a claim or answer, including Docket No. 7, filed on February 2, 2007, three weeks after the claim deadline, or Docket No. 16, filed on April 16, 2007, ninety-five days after the claim deadline.

Docket No. 7 does not satisfy the claim requirements, as it is unsigned. See, e.g., United States v. $86,496.00 in U.S. Currency, No. CV-07-1963-PHX-DGC, 2008 WL 2039355, *2-3 (D. Ariz., May 12, 2008) (holding that the represented claimant's petition filed with the DEA does not satisfy the requirements of Rule G(5) because administrative claims are not a substitute for judicial claims and because the petition was not signed and was untimely); United States v. $50,200, 76 F. Supp. 2d 1247, 1250 (where represented claimants failed to file a timely and verified claim, although advised to do so, court struck unverified answer).  While lack of verification alone may not necessarily preclude a timely claim, this case is distinguishable from cases in which unverified claims have been allowed because here the claim was both untimely and not signed at all. Cf. United States v. Yukon Delta Houseboat, 744 F.2d at 1436 (permitting claimant leave to submit a verified claim where he had filed a timely, verified answer and thought he had filed a claim); United

5

1  States v. 2006 Dodge Crew Cab Pickup Truck, No. CV-F-07-387 OWW/TAG, 2007 WL 2481930,
2  at *3 (E.D. Cal. Aug. 29, 2007) (allowing an unverified claim where claim had been timely filed
3  and government failed to show prejudice); United States v. Various Computers, 82 F.3d 582, 585
4  (3rd Cir. 1996) (holding that it was an error to reject a *timely*, otherwise complete claim merely for
5  absence of verification, in light of claimant's pro se status) (emphasis added).  Furthermore, after
6  filing this pleading, the government notified Mr. Vasquez about the requirements of filing a proper
7  claim, but he failed to perfect his claim.

8  Nor does Docket No. 7 satisfy the requirements of an answer.  An answer must state in short
9  and plain terms a party's defenses to each claim asserted against it, and must admit or deny the
10 allegations asserted against it by an opposing party.  Fed. R. Civ. P. Supp. G(8)(b)(1).  The
11 complaint here asserts that Vasquez admitted to possessing and selling methamphetamine, that there
12 existed a nexus between the currency and illegal drugs, and that Vasquez provided a false name to
13 the arresting officer, among other things.  In Docket No. 7, Vasquez does not admit or deny these
14 allegations made in the complaint, but rather focuses on the allegedly illegal search and seizure.
15 While Mr. Vasquez cursorily adds that he had W-2s to show the source of the currency, he does not
16 directly deny the nexus between the money and drugs.  In contrast, his answer filed on May 13,
17 2008, specifically denies most allegations, including the nexus between the currency and drugs.  See
18 Docket No. 63 at 2, 4, 6.  Complaint ¶¶ 10, 12.  Even if Docket No. 7 satisfied the requirements of
19 an answer, the Court would not be able to accept it since does not include a claim, nor was it
20 preceded by a claim.  See United States v. $86,496, 2008 WL 2039355 at *4, (holding that a
21 claimant had no standing to file his answer because he did not file a verified claim); United States v.
22 Approximately $70,000 in U.S. Currency, No. 1:06-CV-01259-OWW-SMS, 2007 WL 2317136, at
23 *5 (E.D. Cal. Aug. 9, 2007); United States v. $11,918, No. 1:03-cv-05679-AWI-SMS, 2007 WL
24 3037307, at *10 (E.D. Cal. Oct. 17, 2007) (striking a pro se claimant's timely, out-of-order answer
25 where claimant failed to respond to two reminders to file a verified claim).

26 Although not entitled "claim," as previously noted by the Court, Docket No. 16, filed on
27 April 16, 2007, satisfies the requirements for a claim asserting an interest in the seized property
28

under Rule G(5)(a).[2] Docket No. 16 identifies currency the claimant possessed in the amount of approximately $4,000 in his pants pockets, $5,641 in the cab of the truck claimant was driving, and $43,029 in the toolbox in the bed of the truck (page 3); claimant identifies himself as Hector Mr. Vasquez (page 1) and asserts that he owned the money and that he had earned it by working at ESR Construction, Inc.; claimant verifies his interest in the property totaling $43,029 and $9,641 by signing a sworn statement (page 12); and Docket No.16 is addressed to Patricia Kenney, the Assistant U.S. Attorney assigned to the case at the time. The government, in its papers, does not argue otherwise. This claim was received ninety-five days late.

**2. Untimeliness Is Not Excusable for Good Cause**

Considering that Mr. Vasquez received multiple instructions and reminders to file a claim and answer, never petitioned for an enlargement of time, and inexplicably filed his answer fifteen months late, even considering his pro se status, the Court cannot excuse his untimeliness. See United States v. $11,918, 2007 WL 3037307, at *10. Applying the factors set forth by the Ninth Circuit in United States v. $100,348, the Court notes that Mr. Vasquez was aware that the currency was seized when he was arrested on May 5, 2006. See Hieronymus Decl. ¶ 4 (Docket No. 52); United States v. $100, 348, 354 F.3d 1110, 1117-18 (9th Cir. 2004). This factor, therefore, weighs against allowing his late claim and answer. Nor did the United States Attorney encourage the delay here. To the contrary, the United States gave notice to Mr. Vasquez about this forfeiture action when it initiated suit and reminded Mr. Vasquez of his need to file a claim and answer on five occasions, including sending him a copy of Rule G in their March 20, 2007 opposition to his motion to strongly object. This also weighs in favor of striking his claim.

The government did not receive notice of Mr. Vasquez's interest in the property until after the deadline for filing a claim had passed, which cuts against allowing his claim. Mr. Vasquez's initial claim to the DEA does not constitute a valid claim for purposes of Rule G(5) because summary administrative forfeitures and judicial forfeitures are distinct proceedings. United States v.

---

[2] Docket No. 16 is not an answer. Although Docket No. 16 denies a nexus between the drugs seized and his earnings while employed, and provides evidence that he was employed and saving money, Mr. Vasquez does not respond to the specific allegations made in the complaint and does not specifically allege that the money seized was not from drugs. In contrast, Mr. Vasquez's answer on May 13, 2008, specifically addresses each allegation of the complaint. In addition, even if Docket No. 16 constituted an answer as well as a claim, it would still be untimely.

$86,496, 2008 WL 2039355, at *2 (D. Ariz, May 12, 2008); United States v. $50,200, 76 F. Supp. 1247, 1252 (D. Wyo. Dec. 3, 1999). While the government received notice on February 2, 2007 of Mr. Vasquez's interest in the property when Mr. Vasquez filed Docket No. 7, that filing was already twenty-one days after the claim deadline.

As to claimant's health, Mr. Vasquez appears to be healthy and makes no argument to the contrary. Mr. Vasquez explains that his delay was a result of (1) a prison lock down that impeded his access to the prison library, (2) limited English resulting in his misunderstanding the law, and (3), regarding his untimely answer, a conflict between his work hours and those of the prison library where he sought assistance from a fellow prisoner. However, the prison lock down at Mr. Vasquez's prison did not occur until over a month after his claim was due. See Docket No. 61 at 6. As for his allegedly poor English skills, Mr. Vasquez provides evidence of a low language score but a relatively high reading score on a Total Battery test administered September 17, 2007 (See Docket No. 62, Ex. 2), his filings indicate that he has decent command of language or help from those who do, and he did not request an translator for his telephonic appearance at the February 19, 2008 case management conference. The conflict between Mr. Vasquez's work hours and the library hours does not excuse his untimely answer since his answer was due in January, 2007, and his work assignment began in October, 2007. See Docket No. 62 at 1. The Court, therefore, cannot excuse Mr. Vasquez's untimeliness for any of these reasons.

Importantly, Mr. Vasquez did not ask for an extension of time to file his claim. The presence or lack of a request for extension of time weighs heavily on the court's determination to allow an untimely claim. See United States v. $100,348, 354 F.3d 1110, 1118-19 (9th Cir. 2004) (holding that the district court did not abuse its discretion in striking a claim by a pro se claimant who was nine months late in filing his claim and did not ask for an extension to file his claim or offer reasons to justify the delay); United States v. $175,918, 755 F. Supp. 630, 632-33 (S.D.N.Y. 1991) (holding that a pro se claimant's letter to the court requesting an extension of time on the grounds he was attempting to obtain counsel reflected that he was proceeding diligently and merited allowing an untimely claim). The fact that Mr. Vasquez never sought an extension to file his claim or answer weighs especially heavily against excusing his tardiness here, where he received so many notices from the government.

8

As to prejudice to the government, the government would be somewhat prejudiced by granting an extension to Mr. Vasquez after the government has expended effort to notify Mr. Vasquez of his need to file a claim and answer for over a year. If the Court were to allow his claim and answer to stand now, the delay would be significant.

The Court has considered Vasquez's status as pro se litigant in its analysis. While the Court has liberally construed Vasquez's pleadings, pro se parties are still required to follow procedural rules. Ghazali v. Moran, 46 F.3d 52, 54 (9th Cir. 1995); United States v. Merrill, 746 F.2d 458, 465 (9th Cir. 1984), *cert denied*, 469 U.S. 1165 (1985); United States v. $11,918, 2007 WL 3037307, at *10; Palma v. Dent, No. C 06-6151 PJH, 2007 WL 2023517, at *2 (N.D. Cal. Oct. 1, 2007). While Mr. Vasquez was pro se, he timely filed an administrative forfeiture claim, made timely requests for telephonic appearances, filed a consent to proceed before this court, filed motions with exhibits and declarations, and propounded detailed discovery requests, showing some basic knowledge of the legal system. Had Mr. Vasquez responded in some manner to the government's repeated reminders to file a claim and answer, the Court would look more favorably upon allowing his untimely claim. However, in light of all of the factors discussed above, Vasquez's pro se status does not tip the balance in his favor under these circumstances.

Finally, even if the Court were to allow his late claim to stand (Docket No. 16), his answer is woefully and inexplicably late. He did not file it until May 13, 2008, over fifteen months after the deadline. He offers no explanation for his delay, despite four reminders from the government after he had submitted Docket No. 16. Nor does he even contend that he thought that either Docket No. 7 or Docket No. 16 satisfied the requirements of an answer.

The Ninth Circuit dictates that courts should only exercise discretion to grant additional time where the goals underlying the time restriction and the verification requirement are not thwarted. United States v. 100,348.00 in U.S. Currency, 354 F.3d 1110, 1117 (9th Cir. 2004) (quoting United States v. 1982 Yukon Delta Houseboat, 774 F.2d 1432, 1435-36 (9th Cir. 1985)). "The purpose of the time limit is to force claimants to come forward as soon as possible after forfeiture proceedings have been initiated so that all interested parties can be heard and the dispute resolved without delay." United States v. 1982 Yukon Delta Houseboat, 774 F.2d at 1436. With regard to verification, its purpose is to address the danger of false claims. The Ninth Circuit has noted that

9

"where a claimant has made known to the court and the government his interest in the subject property . . . *before the deadline set* for the filing of a proper claim has passed, the policy would not be injured by allowing the claimant to perfect his claim by subsequent verification." Id. (emphasis added). Here, it is clear that the case stalled because Mr. Vasquez did not file a timely claim or answer. He did not file a signed claim until April 2007, and his answer was inexplicably delayed for over fifteen months. Allowing his late claim would seriously thwart the time restriction requirement. Accordingly, this Court will not exercise its discretion to grant additional time.

## III. CONCLUSION

For the foregoing reasons, the Government's Motion to Strike Mr. Vasquez's claim and answer is granted. The United States may renew its Motion for Entry of Default.

Dated: July 3, 2008

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge